## BRUCE TARRO *v.* COMMISSIONER OF MOTOR VEHICLES
### (SC 17579)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

---

Argued March 13—officially released August 1, 2006

*Jeffrey D. Brownstein*, for the appellant (plaintiff).

*Eileen Meskill*, assistant attorney general, with whom, on the brief was *Richard Blumenthal*, attorney general, for the appellee (defendant).

VERTEFEUILLE, J. The plaintiff, Bruce Tarro, appeals from the judgment of the trial court affirming the decision by the defendant, the commissioner of motor vehicles (commissioner), to suspend the plaintiff's motor vehicle operator's license for a period of six months in accordance with General Statutes § 14-227b (b) and (e) (1)[1] because of his refusal to submit

[1] General Statutes § 14-227b provides in relevant part: "(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both, and thereafter, after being apprised of such person's constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that such person's license or nonresident operating privilege may be suspended in accordance with the provisions of this section if such person refuses to submit to such test or if such person submits to such test and the results of such test indicate that such person has an elevated blood alcohol content, and that evidence of any such refusal shall be admissible in accordance with subsection (e) of section 14-227a and may be used against such person in any criminal prosecution, refuses to submit to the designated test, the test shall not be given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that such officer informed the person that such person's license or nonresident operating privilege may be suspended if such person refused to submit to such test or if such person submitted to such test and the results of such test indicated that such person had an elevated blood alcohol content. . . .

"(e) (1) Except as provided in subdivision (2) of this subsection, upon receipt of such report, the Commissioner of Motor Vehicles may suspend any license or nonresident operating privilege of such person effective as of a date certain, which date shall be not later than thirty days after the date such person received notice of such person's arrest by the police officer. Any person whose license or operating privilege has been suspended in accordance with this subdivision shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. The commissioner shall send a suspension notice to such person informing such person that such person's operator's license or nonresident operating privilege is suspended as of a date certain and that such person is entitled to a hearing prior to the effective date of the suspension and may schedule such hearing by contacting the Department of Motor Vehicles not later than seven days after the date of mailing of such suspension notice. . . ."

to a blood alcohol test. The plaintiff claims that the trial court improperly affirmed the commissioner's decision because the arresting police officer lacked a reasonable and articulable suspicion to stop his vehicle, a finding that the plaintiff claims is required under our state constitution, and as a result, the arrest itself was unlawful and his subsequent license suspension should be reversed. We disagree, and, accordingly, we affirm the judgment of the trial court.

The record reveals the following factual and procedural history. The plaintiff was arrested in the town of Plainville for driving while under the influence of intoxicating liquor at 1:43 a.m. on August 21, 2004. Officer Greg A. Barrett of the Plainville police department was exiting a service station in his police cruiser when he saw the plaintiff drive past him. On the basis of his training and experience, Barrett estimated that the plaintiff's vehicle was traveling at approximately fifty miles per hour, a rate in excess of the twenty-five mile per hour speed limit. Barrett pulled up behind the plaintiff's vehicle as the plaintiff slowed down to stop at a red traffic light. After the light turned green, the plaintiff waited a few seconds before resuming driving. Barrett immediately activated his overhead lights and stopped the plaintiff. Barrett approached the car and noticed that the plaintiff had "red cheeks along with red glossy eyes."[2] The plaintiff admitted he had been drinking earlier in the night, and Barrett then administered field sobriety tests, which the plaintiff failed.[3]

---

Public Acts 2004, No. 04-250, § 1, amended § 14-227b, primarily by dividing subsection (e) into two subdivisions, codifying the existing language as subdivision (1) and adding the language that constitutes subdivision (2). Those amendments are not relevant to this appeal. For purposes of convenience, we cite to the current revision § 14-227b throughout this opinion.

[2] Upon handing over his license and registration, the plaintiff also told Barrett that he was "sorry" and stated, "I love you man" before stumbling out of his car to participate in the field sobriety tests.

[3] Barrett asked the plaintiff if he had been drinking, and the plaintiff admitted that he had consumed four beers between the hours of 8:30 p.m. and 11:30 p.m. Barrett then administered a field sobriety test, during which

Thereafter, Barrett transferred the plaintiff to the police station and read him the implied consent advisory contained in § 14-227b (a),[4] which deems that a citizen driver has given his or her consent to blood alcohol content screenings upon operating a vehicle in the state of Connecticut. The plaintiff refused to submit to a breath test for blood alcohol content as is his prerogative under § 14-227b (b), and in accordance with § 14-227b (c),[5] his license was suspended temporarily. Subsequently, the plaintiff exercised his right to request an administrative hearing to contest the license suspension pursuant to § 14-227b (e) (1) and (g),[6] respectively.

the plaintiff failed both the horizontal gaze nystagmus test and the alphabet test. The plaintiff attempted to recite the alphabet twice, first stopping at the letter "D." On his second recitation, the plaintiff became confused after the letter "L" and then concluded with the letter "Y." Barrett had to explain the walk and turn test and the one leg stand test several times before the plaintiff understood the instructions, and the plaintiff failed both of these tests as well.

[4] General Statutes § 14-227b (a) provides: "Any person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine and, if such person is a minor, such person's parent or parents or guardian shall also be deemed to have given their consent."

[5] General Statutes § 14-227b (c) provides in relevant part: "If the person arrested refuses to submit to such test or analysis . . . the police officer, acting on behalf of the [commissioner], shall immediately revoke and take possession of the motor vehicle operator's license . . . ."

[6] General Statutes § 14-227b (g) provides in relevant part: "If such person contacts the department to schedule a hearing, the department shall assign a date, time and place for the hearing, which date shall be prior to the effective date of the suspension . . . . At the request of such person or the hearing officer and upon a showing of good cause, the commissioner may grant one continuance for a period not to exceed fifteen days The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle. . . ."

A hearing was then held, at which the administrative hearing officer, acting on behalf of the commissioner,[7] determined that the four elements set forth in § 14-227b (g)[8] had been met and confirmed the plaintiff's license suspension.

The plaintiff appealed from the commissioner's decision to the Superior Court pursuant to General Statutes § 4-183 (a).[9] On appeal, the plaintiff claimed that the arresting officer did not have a reasonable and articulable basis to stop him as is required under the fourth amendment to the United States constitution and article first, §§ 7 and 9, of the constitution of Connecticut. He further contended that because the illegal stop resulted in an illegal arrest, the commissioner's decision to suspend the plaintiff's operator's license was improper because it was based on evidence that should have been excluded from the hearing. Additionally, the plaintiff claimed that the due process protections provided by article first, §§ 8 and 9, of the constitution of Connecticut require the commissioner, in a license suspension hearing, to determine whether the police stop comported with the fourth amendment's requirement that the police have a reasonable and articulable suspicion to perform an investigative stop. The trial court rejected the plaintiff's claims and rendered judgment dismissing his appeal. This appeal followed.[10]

On appeal in this court, the plaintiff renews his argument that the commissioner was required under article

---

[7] Because the hearing officer acts on behalf of the commissioner, we hereinafter refer to the "hearing officer" as the "commissioner."

[8] See footnote 6 of this opinion.

[9] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

[10] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

first, §§ 8 and 9, of the constitution of Connecticut to make a finding as to whether the stop of the plaintiff's vehicle comported with the fourth amendment. The plaintiff further contends that on the basis of the record before the commissioner, Barrett lacked a reasonable and articulable suspicion to stop him. Even if we were to assume, without deciding, that the commissioner was required under our state constitution to make a determination of whether the police stop was premised on a reasonable and articulable suspicion of wrongdoing, we conclude that the plaintiff has not supplied an adequate record to support his claim and, further, that the record supplied to this court on appeal contains substantial evidence that, in fact, would support a finding that the police stop was based on such a reasonable and articulable suspicion. Because we conclude that the plaintiff's claim fails as a factual matter, we need not reach, and therefore decline to address, the plaintiff's claim that his due process rights under the constitution of Connecticut were violated by the commissioner's failure to determine whether the police had a reasonable and articulable suspicion to stop him. See *Negron* v. *Warden*, 180 Conn. 153, 166, 429 A.2d 841 (1980) ("[w]e . . . follow the recognized policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional question").

At the outset, we note that "the [appellant], here the [plaintiff], bear[s] the burden of providing a reviewing court with an adequate record for review." *Cable* v. *Bic Corp.*, 270 Conn. 433, 442, 854 A.2d 1057 (2004); see also Practice Book § 61-10 ("[i]t is the responsibility of the appellant to provide an adequate record for review"); Practice Book § 60-5 ("[i]t is the responsibility of the appellant to provide an adequate record for review as provided in Section 61-10"). In the present case, the plaintiff did not provide this court with a

record containing evidence sufficient to contravene Barrett's testimony that the basis for his initial stop was his observation of the plaintiff operating his motor vehicle unreasonably fast in violation of General Statutes § 14-218a.[11]

In a typical challenge to an investigative stop in a criminal proceeding, our analysis normally proceeds in two stages. *State* v. *Santos*, 267 Conn. 495, 503, 838 A.2d 981 (2004), citing *State* v. *Oquendo*, 223 Conn. 635, 645–46, 613 A.2d 1300 (1992). First, we must determine if and at what point an investigatory stop or seizure occurred, and then we must determine if the police officer possessed a reasonable and articulable suspicion to make the stop or seizure. *State* v. *Santos*, supra, 503. By contrast, in a civil administrative license suspension hearing, the commissioner is limited to consideration of only four issues: "(1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle." General Statutes § 14-227b (g). In *Fishbein* v. *Kozlowski*, 252 Conn. 38, 743 A.2d 1110 (1999), this court concluded that the commissioner's inquiry is limited "expressly and narrowly" to the four enumerated issues in § 14-227b (g); id., 46; and rejected a claim that the federal constitution requires the commissioner

---

[11] General Statutes § 14-218a (a) provides in relevant part: "No person shall operate a motor vehicle upon any public highway of the state . . . at a rate of speed greater than is reasonable, having regard to the width, traffic and use of highway, road or parking area, the intersection of streets and weather conditions. . . ."

to make findings related to whether the criminal investigatory stop that led to the subsequent license suspension was valid under the fourth amendment to the United States constitution, including whether the police officer had a reasonable and articulable suspicion to stop the motorist.[12] Id., 55.

In the present case, the commissioner limited the plaintiff in his ability to raise the issue of reasonable and articulable suspicion at the administrative hearing citing to the four enumerated issues in § 14-227b (g). From the outset, the commissioner foreclosed inquiry into whether a reasonable and articulable suspicion existed by presuming that the issue of the plaintiff's speeding was established.[13] The plaintiff's attorney therefore never formally contested the reasonable and articulable basis for the stop before the commissioner. Insisting, instead, that the issue of whether the plaintiff was speeding was relevant to the issue of probable cause under § 14-227b (g) (1), the plaintiff's attorney asked "[i]f [he] could have some latitude" and suggested that he would address the issue "very brief[ly]" and then "move on to something else." The commissioner then asked Barrett directly if he believed the plaintiff was driving fifty miles per hour in a twenty-five mile per hour zone, and Barrett responded in the affirma-

---

[12] In *Fishbein v. Kozlowski*, supra, 252 Conn. 50–51, 53 n.10, this court declined to address whether the Connecticut constitution requires an inquiry into reasonable and articulable suspicion at license suspension hearings because the plaintiff therein failed adequately to brief the issue. The plaintiff asks us to decide the issue in the present case, but we decline to do so because of the inadequate record.

[13] The commissioner told the plaintiff's attorney: "I'm not going to try a speeding case, if [the plaintiff is] not guilty on speeding there is no [driving while under the influence]."

tive.[14] The commissioner thereafter forestalled further questioning on the topic.[15]

In light of these limitations, the plaintiff's attorney should have made an offer of proof to preserve the record for appellate review, but he failed to do so. In the absence of additional evidence by way of an offer of proof, the record is insufficient to support the plaintiff's contention that Barrett lacked a reasonable and articulable basis to stop him.[16] See *State* v. *Conrod,* 198 Conn. 592, 597, 504 A.2d 494 (1986) (noting that offer of proof serves, in part, to create adequate record for appellate review); cf. *Johnson* v. *Newell,* 160 Conn. 269, 277, 278

[14] Later in the administrative hearing, the plaintiff was able to introduce a photograph of a thirty-five mile per hour sign posted near where the plaintiff was stopped. The plaintiff's attorney then asked Barrett where he had stopped the plaintiff in relation to the posted thirty-five mile per hour sign, and Barrett responded that the picture was taken "just east" of where he had stopped the plaintiff. The plaintiff's attorney then pressed Barrett to admit he had reported the speed limit to be twenty-five miles per hour when it was thirty-five. Barrett responded, however, that he observed the plaintiff driving unreasonably fast in the twenty-five mile per hour zone.

[15] In particular, the commissioner told the plaintiff's attorney: "That's all I need to hear, counsel."

[16] It bears emphasis that the plaintiff bases his contention that Barrett lacked a reasonable and articulable suspicion on the evidence that was before the commissioner. The plaintiff did not ask in his brief to this court for a rehearing on the issue of the existence of a reasonable and articulable suspicion.

Although the plaintiff's attorney did not make an offer of proof regarding the issue of reasonable and articulable suspicion at the administrative hearing, the plaintiff made a motion in the trial court to present additional evidence that there was not a twenty-five mile per hour speed limit sign posted in the area in which the plaintiff was driving. The plaintiff argued, in his motion, that such evidence would impeach Barrett's testimony that the basis for stopping the plaintiff was that he was traveling fifty miles per hour in a twenty-five mile per hour zone. The trial court denied the plaintiff's motion. In his brief to this court, the plaintiff does not argue, however, that this evidence either bears on the issue of reasonable and articulable suspicion or should be considered. Accordingly, the existence of the plaintiff's motion in the trial court does not alter our conclusion that the plaintiff's claim that Barrett lacked a reasonable and articulable suspicion is based solely on the evidence presented before the commissioner.

A.2d 776 (1971) (rejecting appellant's evidentiary claim on basis of inadequate record because appellant failed to make offer of proof).

Indeed, if this inquiry were within the province of the commissioner, the record, as it is presented on appeal, reveals substantial evidence that would have supported a finding by the commissioner that Barrett had a reasonable and articulable suspicion to stop the plaintiff. Cf. *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 124, 830 A.2d 1121 (2003) ("[s]ubstantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred" [internal quotation marks omitted]); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 216 Conn. 627, 639, 583 A.2d 906 (1990) (review of administrative agency decisions requires courts "to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact").

As we have noted previously herein, "[u]nder the fourth amendment to the United States constitution and article first, §§ 7 and 9, of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest." (Internal quotation marks omitted.) *State* v. *Santos*, supra, 267 Conn. 505. To justify an investigative stop, a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . . In determining whether a detention is justified in a given case, a court must consider if, relying on the whole picture, the detaining officers had a particularized and

objective basis for suspecting the particular person stopped of criminal activity. When reviewing the legality of a stop, a court must examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *Lipscomb*, 258 Conn. 68, 75–76, 779 A.2d 88 (2001).

In the present case, Barrett testified that he had been employed by the Plainville police department for four years, and based on his training and experience, he estimated that the plaintiff was traveling at approximately fifty miles per hour, which was twice the posted speed limit. Barrett further testified that his training in the use of radar equipment had taught him to estimate the speed of a driver visually prior to "locking onto the target." Barrett, who had issued at least 100 speeding tickets over the course of his career and had made between 40 and 50 arrests for driving while under the influence, refused to concede, under cross-examination by the plaintiff's attorney, that the plaintiff could have been traveling at a speed less than forty-five miles per hour in a twenty-five mile per hour zone. Additionally, Barrett testified that when the plaintiff stopped at a red traffic light, he waited a few seconds before he resumed driving after the light turned green.

The only evidence presented that could be viewed as contravening Barrett's testimony was a photograph of a thirty-five mile per hour speed limit sign that was introduced by the plaintiff in an attempt to show that the plaintiff was, in fact, traveling in a thirty-five mile per hour zone and not a twenty-five mile per hour zone as testified to by Barrett. Even if we were to assume that the plaintiff was traveling in a thirty-five mile per hour zone, Barrett's testimony that the plaintiff was traveling at no less than forty-five miles per hour remains undisputed. To the extent that this evidence

was offered to impeach generally Barrett's testimony, it is evident from the record that the commissioner found Barrett's testimony credible. We defer to the commissioner, as the trier of fact, on issues relating to credibility. See *Burton* v. *Mottolese*, 267 Conn. 1, 40, 835 A.2d 998 (2003) (noting that fact finder "is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom" [internal quotation marks omitted]), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004).

The testimony before the commissioner thus established that Barrett had stopped the plaintiff because he had observed him driving unreasonably fast in violation of §14-218a. Additionally, the plaintiff's delay at the green light, taken together with the plaintiff's speeding, raised Barrett's suspicion that the plaintiff was driving while intoxicated. There were specific facts, therefore, which would have supported findings by the commissioner that Barrett reasonably believed the plaintiff was speeding at the very least and, possibly, was driving while intoxicated.[17]

We therefore conclude that, even if the commissioner were required to make a finding of reasonable and articulable suspicion under our state constitution, the record contains sufficient evidence to support such a finding.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[17] The inquiry into reasonable and articulable suspicion "does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *United States* v. *Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981).