## STATE OF CONNECTICUT *v.* GREGORY CYRUS
### (SC 18326)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued March 24—officially released August 17, 2010

*Timothy J. Sugrue*, assistant state's attorney, with whom were *Vincent J. Dooley*, senior assistant state's attorney, and, on the brief, *Patricia M. Froehlich*, state's attorney, for the appellant (state).

*Ernest Green, Jr.,* assistant public defender, with whom was *Martin Zeldis,* chief of legal services, for the appellee (defendant).

*Opinion*

KATZ, J. In this certified appeal,[1] the state appeals from the judgment of the Appellate Court affirming the judgment of the trial court dismissing the charges against the defendant, Gregory Cyrus, for operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes (Rev. to 2005) § 14-227a, operating a motor vehicle without carrying an operator's license in violation of General Statutes § 14-213, and operating a motor vehicle with an obstructed view in violation of General Statutes § 14-99f (c).[2] *State* v. *Cyrus,* 111 Conn. App. 482, 484, 959 A.2d 1054 (2008). On appeal to this court, the state claims that the Appellate Court improperly upheld the trial court's conclusion that the state trooper who had arrested the defendant lacked a reasonable and articulable suspicion to stop the defendant to investigate a possible violation of § 14-99f (c), in contravention of *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). We disagree with the state and, accordingly, we affirm the judgment of the Appellate Court.

The record discloses the following undisputed facts and procedural history. On March 10, 2006, the state

[1] We granted the state's petition for certification to appeal from the Appellate Court limited to the following issue: "Did the Appellate Court correctly determine that the state police did not have a reasonable and articulable suspicion to stop the defendant for driving with obstructed vision under General Statutes § 14-99f (c)?" *State* v. *Cyrus,* 290 Conn. 919, 919–20, 966 A.2d 238 (2009).

[2] Although the information charged the defendant with violating General Statutes § 14-99, both parties acknowledge that the proper statutory reference is to § 14-99f (c). See *State* v. *Cyrus,* 111 Conn. App. 482, 484 n.1, 959 A.2d 1054 (2008). General Statutes § 14-99f (c) provides: "No article, device, sticker or ornament shall be attached or affixed to or hung on or in any motor vehicle in such a manner or location as to interfere with the operator's unobstructed view of the highway or to distract the attention of the operator."

filed a three count information charging the defendant with the aforementioned motor vehicle offenses. The defendant pleaded not guilty and filed a motion to suppress evidence allegedly seized illegally by the police at the time of his arrest, claiming that the stop was unconstitutional because it was supported by neither probable cause nor a reasonable suspicion of criminal activity. At the hearing on the motion to suppress, the state's principal contention was that, on the basis of two anonymous tips about an intoxicated person operating a motor vehicle that had identified the make and license plate number of a car that matched the defendant's vehicle, State Trooper David Mattioli had a reasonable and articulable suspicion that the defendant was operating a motor vehicle while under the influence of alcohol in violation of § 14-227a. After Mattioli offered testimony relating to those facts, the state's attorney asked Mattioli whether he had "notice[d] any violations which would give [him] cause to stop the vehicle . . . ." Mattioli responded that he had noticed that "the vehicle was in violation of [§ 14-99f], which is [obstruction of] view," thereafter stating several times that, prior to the stop, he had observed a chain and a cross[3] hanging from the defendant's rearview mirror. In support of its position, the state offered into evidence the item that had been hanging from the defendant's rearview mirror—a small woodlike cross (one inch wide by one and three-quarters inches long) attached to a beaded chain (one eighth of one inch wide by eight and one-half inches long). The defendant submitted as exhibits exterior photographs of his car, taken from various angles, with the cross hanging from the mirror.

---

[3] Mattioli's initial description and the state's motion for articulation incorrectly refer to the object hanging from the chain as a crucifix, which is defined as a cross bearing the figure of Jesus Christ. Webster's Third New International Dictionary (1993). The object hanging from the defendant's mirror was a simple wooden cross, which functioned as an air freshener.

In its memorandum of decision granting the defendant's motion to suppress, the trial court addressed Mattioli's testimony regarding the claimed violation of § 14-99f (c) only in connection with its resolution of the state's principal claim, finding that, despite the anonymous tips, Mattioli's personal observations of the defendant's car did not disclose anything improper about its operation. The court thus concluded that the information provided was not sufficiently reliable to justify stopping the defendant's car based on a suspicion of driving while intoxicated. The state then filed a motion to reconsider, arguing that the court had not considered Mattioli's second justifiable basis for stopping the defendant's car, namely, to investigate a violation of § 14-99f (c). The trial court summarily denied the state's motion for reconsideration.

Thereafter, the state filed a request for a finding of fact, presumably to create a record for appeal, asking the trial court to make a finding solely as to the following issue: "[W]hether [the trial court had] found the testimony of Trooper Mattioli credible when he testified that he observed the chain hanging from the rearview mirror of the defendant's vehicle prior to the investigatory stop." In response, the trial court issued a "Supplemental Finding of Fact" setting forth the only factual findings in the record pertaining to the issue on appeal. Therein, the court found credible Mattioli's testimony that he had seen " 'a chain hanging approximately [eight] to [ten] inches, hanging from the rearview mirror.' " The court noted as significant, however, the following exchange that had occurred on cross-examination of Mattioli, wherein he was asked: " '[S]ometimes in your judgment there are things hanging from rearview mirrors that do [not] obstruct the view of the driver. Is that correct?' " Mattioli responded: " '[I]f [it's] not a busy night and I'm in a proactive mode, I try to stop as many cars as I can. If they have something

hanging from the mirror, I will stop them, yes.' " After citing this testimony, the trial court stated the following factual and legal conclusion: "A reading of . . . [§ 14-99f (c)] makes it clear that a violation of the statute is predicated upon an object obstructing the view of the driver or distracting the driver. Trooper Mattioli's stop of the defendant was not based on a violation of the statute, but was based solely on the fact that there was something hanging from the defendant's mirror." Accordingly, the trial court dismissed the charges against the defendant.

On appeal to the Appellate Court, the state did not contest the trial court's conclusion that the anonymous tips were an insufficient basis to justify the initial stop of the defendant. *State* v. *Cyrus*, supra, 111 Conn. App. 485. Rather, as the Appellate Court noted, "[i]n its principal brief, the state . . . relied on cases in other jurisdictions that have held that even relatively small objects hanging from a rearview mirror justify the minimal intrusion engendered by a motor vehicle stop. In its reply brief, however, the state concede[d] that our statute does not proscribe 'all items hanging from a rearview mirror' but instead requires a showing that the item or object be hung in such a manner as to 'interfere' with the unobstructed view of the highway or to 'distract the operator.' . . . In its reply brief, the state effectively agree[d] with the defendant that, on its face, § 14-99f (c) does not make the hanging of an object from a rearview mirror a per se infraction. . . . In light of the state's concession that § 14-99f (c) requires proof of interference with an operator's unobstructed view or the operator's distraction, the state [was] left with the difficult task of showing that the [trial] court improperly found that the state [had] failed to meet its burden of proof. It urge[d] the [Appellate Court] to conclude that, even if Mattioli improperly [had] stopped the defendant's car simply because he observed a chain or [cross]

hanging from the defendant's rearview mirror, '[i]f the facts are sufficient to lead an officer to reasonably believe there was a violation, that will suffice, even if the officer is not certain about exactly what it takes to constitute a violation.' " (Citation omitted.) Id., 488–89. The Appellate Court concluded that the trial court's judgment must be affirmed because the state had failed to prove to the trial court that Mattioli held a reasonable and articulable suspicion that the statute, as properly interpreted, was being violated or was about to be violated. Id., 490.

Significantly, before reaching this conclusion, the Appellate Court had rejected as inadequately briefed the state's contention that the trial court's ultimate finding of fact—that the stop of the defendant was not based on a violation of § 14-99f (c) but on the simple fact that Mattioli had observed something hanging from the defendant's mirror—was clearly erroneous. Id., 486–87. In so doing, the Appellate Court further noted that any ambiguities in the record could not be read in the state's favor because, although the state had sought and obtained a finding regarding the credibility of Mattioli's observation of the hanging chain, "the state did *not* ask for a supplemental finding, and the court made none, that Mattioli credibly testified that he had seen anything attached to the rearview mirror 'which moved back and forth' in a distracting or obstructive manner. We cannot fill this gap in the record. Accordingly, we have no basis for faulting the trial court's factual finding that Mattioli stopped the defendant's car in accordance with his routine practice of stopping cars whenever he observed something attached to their rearview mirrors." (Emphasis in original.) Id., 487.

On appeal to this court, the state claims that the Appellate Court improperly upheld the trial court's conclusion that Mattioli lacked a reasonable and articulable justification for stopping the defendant's car. Specifi-

cally, the state claims that the Appellate Court failed to apply the reasonable and articulable suspicion standard established by *Terry* to Mattioli's stop of the defendant's car, and instead improperly required the state to prove that Mattioli stopped the defendant because he had committed a violation of § 14-99f (c).[4] The defendant

[4] The state focuses on the fact that, in rejecting the state's position, the Appellate Court noted that the state's argument "assume[d] that which the state was required to prove, namely, that there was credible evidence that the chain or crucifix that Mattioli observed was in fact interfering with the defendant's vision or distracting his attention." *State* v. *Cyrus*, supra, 111 Conn. App. 489. On the basis of that lone statement, the state claims that the Appellate Court failed to apply the reasonable and articulable suspicion test and instead improperly required the state to prove that Mattioli had stopped the car based on an actual violation of § 14-99f (c). We disagree with that interpretation of the Appellate Court's decision.

On more than one occasion, the Appellate Court expressly recognized that the issue was whether the facts were sufficient to lead Mattioli to have had a reasonable and articulable suspicion that § 14-99f (c) was being violated. Indeed, two sentences of the Appellate Court opinion after the one on which the state relies, the Appellate Court properly framed the issue in concluding that "the state did not establish that Mattioli stopped the defendant's car for any reason other than his mistaken, albeit good faith, belief that § 14-99f (c) makes it an infraction for a car to be driven with any object hanging from a rearview mirror"; id., 490; and deciding to "leave for another day, on another record, the question of how much of a distraction or impairment of an operator's vision the state must establish to prove a violation of § 14-99f (c)." Id. Certainly, if the Appellate Court actually had demanded that the state establish proof of a completed offense rather than simply whether Mattioli lacked the reasonable and articulable suspicion that the defendant was violating § 14-99f (c), it necessarily would have had to examine that question. We, therefore, have no doubt that the Appellate Court clearly understood the state's burden of proof at the suppression hearing as opposed to what its burden would be at trial and determined only that the state had failed to prove to the trial court that Mattioli had held a reasonable and articulable suspicion that the statute, as properly interpreted by the court, was being violated or was about to be violated. Although the language of the Appellate Court opinion that the state highlights, *in isolation*, appears to conflate that issue with what the state ultimately would have to prove at trial, read in context, the statement means simply that the trial court's decision reflects a lack of proof by the state. Of course, because we exercise plenary review over the legal standards governing the appeal, we need not defer, in any event, to the Appellate Court's legal conclusions. Cf. *State* v. *Cruz*, 269 Conn. 97, 104, 848 A.2d 445 (2004) ("[w]hether the Appellate Court properly employed *Golding* review

responds that the state lacked the reasonable and articulable suspicion required by *Terry* for stopping him and that the Appellate Court properly determined, in essence, that the mere fact that he had a cross hanging from the rearview mirror of the car that he was driving did not give rise to a reasonable and articulable suspicion by the officer stopping the car that he was violating § 14-99f (c). Although we agree with the state as to the standard that governs this appeal, we conclude that the record reflects that the state failed to establish the requisite evidentiary record in support of that standard.

The law in this area is well settled. A stop pursuant to *Terry* v. *Ohio*, supra, 392 U.S. 21–22, is legal if three conditions are met: (1) the officer must have a reasonable suspicion that a crime has occurred, is occurring, or is about to occur; (2) the purpose of the stop must be reasonable; and (3) the scope and character of the detention must be reasonable when considered in light of its purpose. See *Michigan* v. *Long*, 463 U.S. 1032, 1051 n.16, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). The United States Supreme Court has further defined "reasonable suspicion" for a traffic stop as requiring "some minimal level of objective justification for making the stop." (Internal quotation marks omitted.) *United States* v. *Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). Because a reasonable and articulable suspicion is an objective standard, we focus "not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion." (Internal quotation marks omitted.) *State* v. *Torres*, 230 Conn. 372, 379, 645 A.2d 529 (1994). On appeal, "[t]he determination of whether a reasonable and articulable suspicion exists rests on a two part analysis: (1) whether the underlying factual

presents a question of law over which our review is plenary"); see *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct." (Internal quotation marks omitted.) *State* v. *Santos*, 267 Conn. 495, 504–505, 838 A.2d 981 (2004).

Therefore, to demonstrate that the stop in the present case was proper, the state was required to show that Mattioli had a reasonable and articulable suspicion that the chain and/or cross that he had observed was, or had been, obstructing the defendant's vision or distracting his attention. In other words, although Mattioli did not have to *know* that the cross and chain was in fact either obstructing the defendant's view or distracting his attention in order to determine that the stop was proper, the trial court was required to conclude that Mattioli *reasonably* suspected that the defendant was violating § 14-99f (c). Accordingly, there had to be some evidentiary basis upon which the court could have drawn that conclusion. See *State* v. *Trine*, 236 Conn. 216, 224–25, 673 A.2d 1098 (1996) ("[i]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion" [internal quotation marks omitted]).

In determining whether such a basis existed in fact and law, "[o]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Pierre*, 277 Conn. 42,

92, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006).

As we previously have indicated, the sole finding by the trial court was that Mattioli had stopped the defendant's car because he saw the cross hanging from the rearview mirror and mistakenly believed that § 14-99f (c) makes it an infraction for a car to be driven with any object hanging from a rearview mirror.[5] Although Mattioli's misunderstanding of the applicable law would not be dispositive,[6] there still would have to be some evidence upon which the trial court could have concluded that Mattioli nevertheless had a reasonable and articulable suspicion that the defendant was engaged in criminal activity—in the present case, that meant that Mattioli had a reasonable suspicion, one that necessarily could be articulated, that the hanging cross interfered with the defendant's unobstructed view or distracted his attention. That is the burden the state failed to satisfy.[7]

[5] As the Appellate Court noted, "[a]s the trier of fact, the [trial] court had the authority to find, on the credible record before it, that the state did not establish that Mattioli stopped the defendant's car for any reason other than his mistaken, albeit good faith, belief that § 14-99f (c) makes it an infraction for a car to be driven with any object hanging from a rearview mirror. Although our legislature might have enacted such a statute, the state now concedes that it has not done so." *State* v. *Cyrus*, supra, 111 Conn. App. 490.

[6] When a traffic stop is based upon a mistake of law, that mistake cannot provide the objective grounds for reasonable suspicion to render the stop constitutional. *United States* v. *McDonald*, 453 F.3d 958, 961 (7th Cir. 2006). Although this court has not spoken directly to this issue, we presume for purposes of this opinion that an otherwise improper stop based on a *mistake of law* may nonetheless be deemed reasonable and constitutional if the facts known to the officer raised a reasonable suspicion that the defendant was in fact violating the law as properly interpreted. See *United States* v. *Delfin-Colina*, 464 F.3d 392, 399 (3d Cir. 2006) (concluding that, if objective review of record establishes reasonable grounds to conclude identified law actually was broken, stop is constitutional despite fact that officer was mistaken about scope of activities law actually prohibited).

[7] Indeed, as the Appellate Court's rejection of the state's challenge to the trial court's ultimate finding of fact demonstrates, the record reflects that the state belatedly recognized that the record was deficient as to essential factual findings, but for whatever reason, failed to elicit essential testimony

*Commonwealth* v. *Brazeau*, 64 Mass. App. 65, 831 N.E.2d 372 (2005), presents a compelling treatment of this issue under facts quite similar to those in the present case. In *Brazeau*, the items that had served as the basis for the motor vehicle stop in question were two small wooden hearts and one plastic diamond shaped object. Id., 67. "[The] objects were hanging together from a narrow piece of string or fishing line; their total width was about one and one-half inches, and their total height about one inch. To put their size into perspective, the vehicle's windshield was approximately sixty inches wide and forty inches tall, or in the vicinity of 2,400 square inches. The [police] officer acknowledged that the total area of the clustered items was only about one inch square." Id. The officer further acknowledged that he had effectuated the stop because he observed these objects hanging from the rearview mirror and, on that basis alone, had determined that the operation of the vehicle was or may have been impeded.[8] Id. The Massachusetts Appeals Court deter-

from Mattioli or to obtain essential findings from the trial court. The reason the state failed to meet its burden appears to be directly related to how it initially presented this issue to the trial court, wherein the evidence adduced and the findings sought supported only the fact that Mattioli had stopped the defendant because *something* was hanging from the rearview mirror, not that this object appeared to obstruct the defendant's view. The Appellate Court properly observed the key problem in the record that compelled its affirmance of the trial court's judgment in this case—specifically, the state's "shifting" interpretation of § 14-99f (c) and hence what it was required to prove to establish the validity of the stop. *State* v. *Cyrus*, supra, 111 Conn. App. 488.

[8] In *Brazeau*, the trial court had found that the diamond shaped prism, one of the objects suspended from the mirror, possessed reflective characteristics and that the investigating police officer had observed the reflection of the prism as the motor vehicle passed him. *Commonwealth* v. *Brazeau*, supra, 64 Mass. App. 66. The Massachusetts Appeals Court concluded, however, that there was no evidentiary basis for this finding. Id. "Rather, the evidence adduced at the motion hearing established only that the officer effectuated the stop because he observed one or more small objects hanging from the rearview mirror and, on that basis alone, determined that the operation of the vehicle was or may have been impeded." Id.

mined that the officer did not have a particularized and objective basis for suspecting a traffic violation, concluding that "[t]he mere existence of two or three small items hanging from a rearview mirror does not suffice, we think, to constitute a violation of [Mass. Ann. Laws] c. 90, § 13 [LexisNexis 2005], or warrant police investigation. Although the [l]egislature could have chosen to do so, it has not specifically prohibited the hanging of objects from a vehicle's rearview mirror. Contrast Minn. Stat. § 169.71 (1) [2004] ('[n]o person shall drive or operate any motor vehicle . . . with any objects suspended between the driver and the windshield, other than sun visors and rear vision mirrors . . .'); S.D. Codified Laws § 32-15-6 (2002) ('[i]t is a petty offense for any person to drive any vehicle upon a highway with any object or gadget dangling between the view of the driver and the windshield of the vehicle'). Indeed, we take judicial notice of the fact that objects such as air fresheners, graduation tassels, and religious medals commonly are hung from the rearview mirrors of motor vehicles driven in the Commonwealth. We doubt that the [l]egislature intended this ordinary practice to be grounds, without more, for issuing a citation or for justifying a stop by police." *Commonwealth* v. *Brazeau*, supra, 68.

As in *Brazeau*, in the present case, there was no testimony by Mattioli that he had in fact relied upon "objectively verifiable qualities of the hanging items that made them distracting or that interfered with the driver's view . . . ." Id.; compare *State* v. *Quinlan*, 921 A.2d 96, 108 (R.I. 2007) (The court concluded that, in contrast to the facts in *Brazeau*, the evidence before the trial court established " 'objectively verifiable qualities of the hanging items that made them distracting or that interfered with the driver's view' " because "the cluster of items hanging from the mirror included a flag that was several inches wide and long, with an inch of

fringe on each side. This obstruction spanned from the rearview mirror to the dashboard and also included a thick strand of beads and several cardboard air fresheners. There was testimony from [the police officer who effectuated the stop] that the obstruction was visible from his traffic post. The photographs introduced establish objectively verifiable evidence that this cluster of material and objects impeded the driver's view and fall within the parameters of the statute."). Mattioli simply testified that, prior to effectuating the stop, he had observed a chain, approximately eight to ten inches long, hanging from the mirror. The object that Mattioli saw hanging from the rearview mirror, which was offered into evidence, was not large enough by any objective measure in and of itself to prove that it would obstruct a driver's view. To the contrary, the object was relatively small and dwarfed by the size of the motor vehicle's windshield, as captured in the photographs submitted as exhibits by the defendant. Moreover, although, at oral argument to this court, the defendant conceded that the chain could sway, there is no evidence: that it was swinging back and forth in front of the defendant's field of vision; that, in light of its size and placement relative to the driver's field of vision, it was capable of swinging that far; or that it appeared to move in such a way or to such an extent that it could distract the driver.[9] Indeed, the trial court,

[9] We note that, at the hearing on the motion to suppress, Mattioli did testify that he had observed the chain moving back and forth after the defendant's car turned a corner onto the street where Mattioli effectuated the stop. As we previously have noted, however, the state did not request, and the trial court did not make, any finding as to whether Mattioli's testimony that he had seen the chain moving prior to the stop was credible and, if so, whether the facts objectively gave rise to a reasonable suspicion that the chain could have been moving in such a manner that it either obstructed the defendant's view or distracted him. Indeed, we note that the state implicitly has conceded that the record does not support a finding that Mattioli suspected that the chain was distracting the defendant because it sought certification to appeal solely on the question of whether "the Appellate Court correctly determine[d] that the state police did not have a reasonable and articulable suspicion to stop the defendant for driving with obstructed

as the finder of fact, did not conclude that the eight and one-half inches long chain and attached cross could have obstructed the defendant's vision or served as a distraction. Nor did Mattioli testify as to any facts from which the trial court could have made such a finding— Mattioli did not say that he had seen the defendant peering around the object, glancing toward the object and away from the road ahead of him or driving his car in such a manner to suggest that his view was obstructed or that he was distracted. Indeed, the state presented no testimony that Mattioli considered the hanging chain to present an obstruction to the defendant's view of the roadway. Compare *People* v. *White*, 107 Cal. App. 4th 636, 642, 132 Cal. Rptr. 2d 371 (2003) (concluding that, because officer stopping vehicle never had testified that he believed air freshener hanging from rearview mirror obstructed driver's view, or to alternative facts that would suggest driver's view was impeded, there was no objectively reasonable and articulable basis to stop vehicle), *People* v. *Arias*, 159 P.3d 134, 138–39 (Colo. 2007) (concluding that motor vehicle stop was unjustified because officer had not testified as to how hanging air freshener obstructed driver's view, including how object was displayed or angle of vision that was obstructed) and *People* v. *Cole*, 369 Ill. App. 3d 960, 969, 874 N.E.2d 81 (concluding that motor vehicle stop was unjustified because arresting officer had not testified how hanging object materially obstructed driver's view), cert. denied, 223 Ill. 2d 644, 865 N.E.2d 971 (2007), with *People* v. *Colbert*, 157 Cal. App. 4th 1068, 1070, 68 Cal. Rptr. 3d 912 (2007) (concluding that stop was justified because officer had testified that he believed that hanging air freshener was " 'large enough to obstruct [the driver's] view through the front windshield,' " because tree shaped air freshener was four and

vision under . . . § 14-99f (c)?" *State* v. *Cyrus*, 290 Conn. 919, 919–20, 966 A.2d 238 (2009).

three-quarters inches tall and two and three-quarters inches wide, and because officer testified that the defendant "had found it necessary to remove a similar-sized object that he had hung from the rearview mirror in his personal vehicle because it obstructed his view") and *People* v. *Jackson*, 335 Ill. App. 3d 313, 314, 316, 780 N.E.2d 826 (2002) (reversing trial court's order suppressing evidence when police officer credibly testified that his quick glance at two air fresheners hanging from rearview mirror of passing car " 'appeared to be a large obstruction in [the defendant's] front windshield' " in violation of statute prohibiting hanging object that " 'materially obstruct[s] the driver's view' ").

The trial court recognized that there must be more than a hypothetical possibility that the driver's vision would be obstructed or that he would be distracted to constitute a violation of § 14-99f (c). Mattioli had to have reasonably believed that the statute was being violated or was about to be violated, and he must have been able to articulate this reasonable belief to the court. It would have been improper to conclude that Mattioli reasonably suspected that the chain and cross hanging from the defendant's rearview mirror was in violation of § 14-99f (c) without regard to whether there was a factual basis for Mattioli to conclude that the defendant's field of vision appeared to be obstructed or that the defendant appeared to be distracted by the hanging object. Because Mattioli's testimony provided no such facts, he did not provide any basis to persuade the court that he had believed that the hanging cross obstructed the defendant's view or that such a belief would have been reasonable. Thus, the trial court was left with a record that did not, as a matter of law, give rise to a reasonable and articulable suspicion of a violation of § 14-99f (c). Therefore, we agree with the Appellate Court's determination that the trial court properly dismissed the charges against the defendant.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and NORCOTT and McLACHLAN, Js., concurred.

VERTEFEUILLE, J., with whom, PALMER and ZARE-LLA, Js., join, dissenting. I respectfully disagree with the majority's conclusion that the Appellate Court properly determined that the state failed to demonstrate that State Trooper David Mattioli possessed a reasonable and articulable suspicion to stop the defendant, Gregory Cyrus, for a suspected violation of General Statutes § 14-99f (c)[1] pursuant to *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). After a careful review of the record, I am persuaded that the state established that Mattioli had a reasonable and articulable suspicion to conduct a *Terry* stop of the defendant's vehicle in order to investigate whether the chain hanging from the defendant's rearview mirror either "interfere[d] with the operator's unobstructed view . . . or . . . distract[ed] the attention of the operator." General Statutes § 14-99f (c). Accordingly, I would reverse the judgment of the Appellate Court, which upheld the judgment of the trial court dismissing the charges against the defendant. I therefore dissent.

The majority opinion adequately sets forth the facts found by the trial court, as well as the procedural history before the trial court. The following additional facts and procedural history regarding the proceedings before the Appellate Court, however, are also relevant to the issue on appeal. The state appealed to the Appellate Court from the judgment of the trial court dismissing the charges, challenging both the findings of fact and con-

[1] General Statutes § 14-99f (c) provides that "[n]o article, device, sticker or ornament shall be attached or affixed to or hung on or in any motor vehicle in such a manner or location as to interfere with the operator's unobstructed view of the highway or to distract the attention of the operator."

clusions of law contained in the trial court's decision. *State* v. *Cyrus*, 111 Conn. App. 482, 485, 959 A.2d 1054 (2008). Specifically, the state claimed that the trial court improperly had determined that Mattioli had stopped the defendant's car merely because he had observed an object hanging from the defendant's rearview mirror, rather than for a violation of § 14-99f (c). Id. The state additionally maintained that the trial court failed to apply the reasonable and articulable suspicion standard for a *Terry* stop, instead improperly requiring the state to prove a completed violation of § 14-99f (c) in order to conclude that Mattioli's stop of the defendant's vehicle was proper. Id. The state's contention was based on the premise that when "[v]iewing Mattioli's testimony in *its entirety*, the [trial] court found that 'Mattioli's stop of the defendant was not based on a violation of the statute but was based solely on the fact that there was something hanging from the defendant's mirror.' Because, in the [trial] court's view, the statute required a showing that the object in question was in fact 'obstructing the view of the driver or distracting the driver,' the [trial] court dismissed the charges against the defendant." Id., 486.

The Appellate Court rejected the state's claims, reasoning that the trial court's factual findings regarding Mattioli's justification for stopping the car were supported by the record. Id., 487. The Appellate Court ultimately determined that the trial court properly dismissed the charges against the defendant. Id., 490. It concluded that "the state did not establish that Mattioli stopped the defendant's car for any reason other than his mistaken, albeit good faith, belief that § 14-99f (c) makes it an infraction for a car to be driven with *any* object hanging from a rearview mirror"; (emphasis in original) id.; rather than an item that was "hung in such a manner as to *interfere* with the unobstructed view

of the highway or to *distract* the operator." (Emphasis in original; internal quotation marks omitted.) Id., 488.

I agree with the majority with respect to the standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . We undertake a more probing factual review when a constitutional question hangs in the balance. . . . In the present case, in which we are required to determine whether the defendant was seized by the police [pursuant to a *Terry* stop], we are presented with a mixed question of law and fact that requires our independent review." (Citations omitted; internal quotation marks omitted.) *State* v. *Burroughs*, 288 Conn. 836, 843–44, 955 A.2d 43 (2008).

I further agree with the majority that "[i]t is well settled that a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime." (Internal quotation marks omitted.) *State* v. *Batts*, 281 Conn. 682, 690–91, 916 A.2d 788, cert. denied, 552 U.S. 1047, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007). I want to emphasize, however, three important principles regarding *Terry* stops. First, the purpose of a *Terry* stop is inherently investigatory. "When a reasonable and articulable suspicion exists, the detaining officer *may conduct an investigative stop of the suspect in order to confirm or dispel his suspicions.* . . . This rule applies when the police reasonably suspect a traffic violation." (Citations omitted; emphasis added; internal quotation

marks omitted.) *State* v. *Batts*, supra, 691; see also *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990) ("a brief investigatory detention [is permitted], *even in the absence of probable cause*, if the police have a reasonable and articulable suspicion that a person has committed or is about to commit a crime" [emphasis added]).

Second, it is axiomatic that an officer's subjective beliefs regarding the relevant law or underlying facts are irrelevant to a proper *Terry* analysis. "Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on *whether a reasonable person*, having the information available to and known by the police, would have had that level of suspicion." (Emphasis added; internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 149, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); see also *State* v. *Mikolinski*, 256 Conn. 543, 551, 775 A.2d 274 (2001) (noting *Terry* stops are *"predicated* upon police discretion" [emphasis in original]).

Third, to demonstrate reasonable and articulable suspicion, a police officer may rely on rational inferences derived from observed facts. It is settled that "a police officer must be able to point to specific and articulable facts which, *taken together with rational inferences from those facts*, reasonably warrant that intrusion. . . . In determining whether a detention is justified in a given case, a court must consider if, relying on the whole picture, the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity. When reviewing the legality of a stop, a court must examine the specific information available to the police officer at the time of the initial intrusion and *any rational inferences to be derived therefrom*." (Emphasis added; internal quotation marks omitted.) *Tarro* v. *Commissioner of Motor Vehicles*, 279 Conn. 280, 290–91, 901 A.2d 1186 (2006);

see also *Terry* v. *Ohio*, supra, 392 U.S. 21 ("in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion").

In the lower court proceedings, the state claimed that Mattioli had conducted a *Terry* stop of the defendant's car for a suspected violation of § 14-99f (c). To execute a proper *Terry* stop with regard to a possible violation of this statute, a police officer must demonstrate that he or she had a reasonable and articulable suspicion, based on specific and articulable facts, and reasonable inferences therefrom, that an object in the driver's car either interfered with the driver's unobstructed view or distracted the driver's attention. See *Tarro* v. *Commissioner of Motor Vehicles*, supra, 279 Conn. 290–91. Whether a reasonable and articulable suspicion of a violation of § 14-99f (c) existed constitutes not only the heart of the issue before this court, but also the issue previously before the trial court and the Appellate Court.[2]

---

[2] The majority fails to recognize that the Appellate Court did not apply the proper *Terry* standard to the state's claims, but rather adopted the trial court's conclusion that the state must prove a completed offense to state a *Terry* claim. As the Appellate Court noted, the state "urge[d] [the Appellate Court] to conclude that, even if Mattioli improperly stopped the defendant's car simply because he observed a chain or crucifix hanging from the defendant's rearview mirror, '[i]f the facts are sufficient to lead an officer to reasonably believe there was a violation, that will suffice, even if the officer is not certain about exactly what it takes to constitute a violation.' " *State* v. *Cyrus*, supra, 111 Conn. App. 489. The state, therefore, presented a classic *Terry* argument, but the Appellate Court expressly rejected it, concluding that "[a]ccepting this argument *would stand the state's burden of proof in a criminal case* on its head. . . . The state's argument assumes that which the state *was required to prove*, namely, that there was *credible evidence* that the chain or crucifix that Mattioli observed was *in fact interfering with the defendant's vision or distracting his attention*." (Emphasis added.) Id. The Appellate Court, in rejecting the state's *Terry* argument, required the state to prove a completed violation of the statute. Rather than permitting the state to prove that the object *could have been* interfering with the defendant's vision or distracting his attention, the Appellate Court concluded

Unlike the majority, I begin my analysis with the relevant statutory language. Section 14-99f (c) provides that "[n]o article, device, sticker or ornament shall be attached or affixed to or hung on or in any motor vehicle in such a manner or location as to interfere with the operator's unobstructed view of the highway or to distract the attention of the operator." The plain language of § 14-99f (c) prohibits two categories of objects in a motor vehicle. First, the statute prohibits objects that "interfere with the operator's unobstructed view . . . ." General Statutes § 14-99f (c). Second, the statute prohibits objects that distract a driver's attention. General Statutes § 14-99f (c). To conduct a *Terry* stop for a suspected violation of § 14-99f (c), therefore, there need only have been observed by Mattioli an object attached or affixed to the defendant's vehicle that possibly was obstructing the driver's view *or* distracting the driver.

that the state had to prove that the object *in fact* caused an interference. This is, as the Appellate Court stated, the state's burden in a criminal case, namely, factual proof that a violation *actually had occurred*, rather than whether a reasonable suspicion that a violation *could be occurring* pursuant to *Terry*.

Contrary to the majority's assertion that the state interprets this quotation out of context, the Appellate Court several times applied the improper standard, therefore consistently misconstruing the state's argument. The Appellate Court noted that the "state sought to justify a *Terry* stop by alleging an automobile operator's *violation* of . . . § 14-99f (c)." (Emphasis added.) Id., 483. The Appellate Court, by misconstruing the state's argument as intending to prove a violation, misapplied *Terry* because only a reasonable and articulable suspicion that a violation *could be* occurring is required, not evidence of a completed violation. The Appellate Court additionally noted that it affirmed the judgment of the trial court because "the state did not establish that [the defendant] *had violated* the statute." (Emphasis added.) Id., 484. The Appellate Court further disagreed with the state's claim that it was improperly required by the trial court "to establish that such a hanging object *in fact* obstructed the operator's vision or distracted the operator's attention." (Emphasis added.) Id., 485. The Appellate Court thus repeatedly emphasized its requirement that the state prove a completed violation rather than a reasonable and articulable suspicion that a violation could be occurring.

As we previously have set forth herein, a valid *Terry* stop need not be based on knowledge of a completed offense. A *Terry* stop requires only a reasonable and articulable suspicion that a violation of the statute *could be occurring*. See, e.g., *State* v. *Colon*, supra, 272 Conn. 149 ("a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, *even if there is no probable cause to make an arrest*" [emphasis in original; internal quotation marks omitted]). This comports with the purpose of a *Terry* stop, which is to serve as an investigative tool for police officers. "A recognized function of a constitutionally permissible stop is to maintain the status quo for a brief period of time to *enable the police to investigate a suspected crime*. . . . Therefore, [a]n investigative stop can be appropriate even where the police have not observed a violation because a reasonable and articulable suspicion can arise from conduct that alone is not criminal. . . . In evaluating the validity of such a stop, courts must consider whether, in light of the totality of the circumstances, the police officer had a particularized and objective basis for *suspecting the particular person stopped of criminal activity*." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Lipscomb*, 258 Conn. 68, 76, 779 A.2d 88 (2001); see also *Terry* v. *Ohio*, supra, 392 U.S. 22 ("effective crime prevention and detection . . . [underlie] the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest"). Because *Terry* only requires an officer to have a reasonable and articulable *suspicion*, the officer making a stop for a possible violation of § 14-

99f (c) need not possess *knowledge*[3] that the object in the car either is interfering with the driver's view or is distracting the driver's attention. Instead, the officer may stop the vehicle because he or she has a reasonable and articulable suspicion that an object may be either obstructing the driver's view or distracting the driver's attention. Indeed, a *Terry* stop is intended to allow the officer to investigate further as to whether the object, in fact, either obstructs the driver's view or distracts the driver's attention. The officer need not know prior to the stop that the object either obstructs the driver's view or distracts the driver's attention.

During the previous court proceedings, the trial court found credible Trooper Mattioli's testimony that he saw "a chain hanging approximately [eight] to [ten] inches, hanging from the rearview mirror" prior to executing his stop of the defendant's automobile. A chain, freely suspended from the rearview mirror and measuring nearly one foot in length, would readily swing or move when the defendant made a turn or drove over an uneven surface.[4] Because the chain was hanging from

[3] " 'As a matter of language, the word "knowing" [and therefore knowledge] literally imports something pretty close to 100 [percent] certainty; "believing," something less than certainty; and "suspecting," something less certain than "believing." ' 2 W. LaFave & A. Scott, Substantive Criminal Law (1986) § 8.10, p. 427. Black's defines 'suspicion' to mean '[t]he apprehension of something without proof or upon slight evidence. Suspicion implies a belief or opinion based upon facts or circumstances which do not amount to proof.' Black's Law Dictionary (6th Ed. 1990). Webster's states that 'suspicion' means 'imagination or apprehension of something wrong or hurtful without proof or on slight evidence.' Webster's Third New International Dictionary (1986). 'Suspicion' then does not rise to the level of 'belief,' let alone 'knowledge.' " *State* v. *Fuller*, 56 Conn. App. 592, 620–21, 744 A.2d 931, cert. denied, 252 Conn. 949, 748 A.2d 298, cert. denied, 531 U.S. 911, 121 S. Ct. 262, 148 L. Ed. 2d 190 (2000).

[4] During oral argument in this court, the counsel for the defendant *conceded* that the chain could move and swing back and forth when the vehicle moved. Despite this admission, the majority insists that there is no proof that the chain will swing while the car is in motion. The majority disregards Newton's first law of physics, specifically, that an object in motion will remain in motion until an outside force acts upon it. See 1A P. Tipler & G.

the rearview mirror, it had ample room to swing in front of the windshield and over the dashboard of the car near the defendant, who was operating the vehicle. As a result, I would conclude that it was reasonable for Mattioli to *suspect* that the chain *could* swing into the defendant's view, thereby causing an obstruction to the defendant's view, or distracting the defendant's attention with its movement. Accordingly, I would conclude that Mattioli had a reasonable and articulable suspicion that the defendant possibly was violating § 14-99f (c) at the time when the trooper stopped the defendant's vehicle and that Mattioli could justifiably execute a *Terry* stop to investigate whether the object did, in fact, interfere with the defendant's unobstructed view or distract his attention.

Many states have statutes similar to § 14-99f (c) that prohibit the placement of objects in motor vehicles that obstruct the view of the driver. See, e.g., Ariz. Rev. Stat. Ann. § 28-959.01 (B) (2004) (prohibiting object that "obstructs or reduces a driver's clear view"); Cal. Veh.

Mosca, Physics for Scientists and Engineers: Mechanics (5th Ed. 2004), c. 4, § 4-1, p. 85. The laws of physics, therefore, would allow a reasonable person to conclude that the chain, hanging from the defendant's rearview mirror, would appear to swing left as the defendant turned his car to the right. This is because the chain will remain in its forward moving trajectory until the forces of the car turning right alter its course. The forces of the car turning will then destabilize the chain, causing it to move back and forth since, according to Newton's third law of physics, every action also has an equal and opposite reaction. See id., c. 4, § 4-6, pp. 101–102.

Similarly, the majority improperly faults the state for what it finds to be a gap in the record, namely, that the state did not secure a factual finding that the chain actually obstructed the defendant's view or distracted the defendant's attention. I emphasize again that such a finding is not required by *Terry*. Officer Mattioli was justified in executing a traffic stop because, upon observing the hanging chain, he was justified in drawing reasonable inferences to conclude that the chain would swing when the car moved or turned. See *Tarro* v. *Commissioner of Motor Vehicles*, supra, 279 Conn. 290 ("a police officer must be able to point to specific and articulable facts which, *taken together with rational inferences from those facts*, reasonably warrant that intrusion" [emphasis added; internal quotation marks omitted]).

Code § 26708 (a) (2) (Deering 2000) (same); Mich. Comp. Laws Serv. § 257.709 (1) (c) (LexisNexis 2001) (prohibiting object that "obstructs the vision of the driver"); N.Y. Veh. & Traf. Law § 375.30 (McKinney 2005) (prohibiting objects that "obstruct or interfere with the view . . . or to prevent him from having a clear and full view"); Tex. Transp. Code Ann. § 547.613 (a) (1) (Vernon 1999) (prohibiting object that "obstructs or reduces the operator's clear view"). A comparison of the statutes of other states with § 14-99f (c) reveals that our statute is noteworthy in two respects. First, it prohibits items that *distract* the driver as well as those that obstruct his or her view of the road. Second, many other statutes do not require a completely unobstructed view as § 14-99f (c) does; rather they prohibit only a *material* or substantial obstruction of the driver's view. See, e.g., Fla. Stat. § 316.2004 (2) (b) (2007) ("materially obstructs, obscures, or impairs the driver's clear view"); 625 Ill. Comp. Stat. Ann. § 5/12-503 (c) (West 2008) ("materially obstructs the driver's view"); Kan. Stat. Ann. § 8-1741 (a) (2001) ("substantially obstructs, obscures or impairs the driver's clear view"); 75 Pa. Cons. Stat. Ann. § 4524 (a) (West 2006) ("materially obstructs, obscures or impairs the driver's clear view"). The differences between our statute and similar statutes in other states demonstrate, therefore, that in enacting § 14-99f (c), our legislature intended that this state would have a broad prohibition against objects in a motor vehicle that distract or obstruct the driver's view in any way, thus giving law enforcement authorities wide authority to investigate the impact of such objects on the driver. That choice is one that properly belongs to the legislature and it is not within the province of this court. See *State* v. *Joyner*, 225 Conn. 450, 460, 625 A.2d 791 (1993) ("in light of established doctrines implicit in the separation of powers, the primary responsibility for enacting the laws that define and classify crimes is vested in the legislature").

My conclusion that there existed a reasonable and articulable suspicion that the defendant possibly was in violation of § 14-99f (c) is consistent with appellate authority from other states reaching the same conclusion on similar facts. For example, the California Court of Appeal held that observation of a tree-shaped air freshener four and three-quarters inches tall, one and three-quarters inches long at the base, and two and three-quarters inches wide at its widest point, hanging from the rearview mirror provided a reasonable and articulable suspicion that the driver's clear view was either obstructed or reduced.[5] *People* v. *Colbert*, 157 Cal. App. 4th 1068, 1070, 68 Cal. Rptr. 3d 912 (2007). Similarly, the Virginia Court of Appeals determined that the observation of a three and one-half inches long dragon-shaped air freshener hanging from the rearview mirror provided a reasonable and articulable suspicion that the driver's clear view was obstructed.[6] *Commonwealth* v. *Bryant*, Virginia Court of Appeals, Docket No. 0076-04-01 (June 15, 2004); see also *United States* v. *Ramos-Caraballo*, 375 F.3d 797, 801 (8th Cir. 2004) (observation of seven and three-quarters inches long tree-shaped air freshener hanging from rearview mirror provided adequate basis for reasonable and articulable suspicion that driver's view was obstructed or unclear);[7]

[5] Section 26708 (a) (2) of the California Vehicle Code (Deering 2000) provides: "No person shall drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied in or upon the vehicle which obstructs or reduces the driver's clear view through the windshield or side windows."

[6] Section 46.2-1054 of the Virginia Code Annotated (2005) provides in relevant part: "It shall be unlawful for any person to drive a motor vehicle on a highway in the Commonwealth with any object or objects . . . suspended from any part of the motor vehicle in such a manner as to obstruct the driver's clear view of the highway through the windshield, the front side windows, or the rear window, or to alter a passenger-carrying vehicle in such a manner as to obstruct the driver's view through the windshield . . . ."

[7] Section 60-6,256 of the Nebraska Revised Statutes (2004) provides in relevant part: "It shall be unlawful for any person to operate a motor vehicle with any object placed or hung in or upon such vehicle, except required or permitted equipment of the vehicle, in such a manner as to obstruct or

*United States* v. *Geary,* United States District Court, Docket No. CR09-2023 (N.D. Iowa February 22, 2010) (observation of twenty square inch navigation device affixed to windshield constituted reasonable and articulable suspicion that driver's clear view was obstructed or reduced).[8] The conclusion in each of these cases is fact driven, influenced particularly by the size of the object in question, and reliant upon the language of the relevant statute.[9]

Both the majority and the defendant rely on *Commonwealth* v. *Brazeau,* 64 Mass. App. 65, 831 N.E.2d 372 (2005). I conclude, however, that *Brazeau* is distinguishable on its facts and the law. In that case, the

interfere with the view of the operator through the windshield or to prevent the operator from having a clear and full view of the road and condition of traffic behind such vehicle. . . ."

[8] Section 28-959.01 B of the Arizona Revised Statutes Annotated (West 2004) provides: "Except as otherwise provided in this section, a person shall not operate a motor vehicle with an object or material placed, displayed, installed, affixed or applied on the windshield or side or rear windows or with an object or material placed, displayed, installed, affixed or applied in or on the motor vehicle in a manner that obstructs or reduces a driver's clear view through the windshield or side or rear windows."

[9] The out-of-state cases cited by the majority are similarly fact driven and reliant upon the relevant statute, and they are therefore distinguishable from the present case. In *People* v. *White,* 107 Cal. App. 4th 636, 642, 132 Cal. Rptr. 2d 371 (2003), and *People* v. *Colbert,* supra, 157 Cal. App. 4th 1072, the statute relied upon prohibited driving a vehicle with "any object . . . displayed [that] obstructs or reduces the driver's *clear view* through the windshield or side windows." (Emphasis added.) Unlike our statute, § 14-99f (c), which requires a completely unobstructed view, the California statute only requires a "clear view . . . ." Cal. Veh. Code § 26708 (a) (2) (Deering 2000). Similarly, in *People* v. *Jackson,* 335 Ill. App. 3d 313, 315, 780 N.E.2d 826 (2002), and *People* v. *Cole,* 369 Ill. App. 3d 960, 961, 874 N.E.2d 81 (2007), the statute only prohibited items that "materially obstructe[d]" a driver's view rather than any item that interfered with the driver's unobstructed view. Additionally, in *People* v. *Arias,* 159 P.3d 134, 137 (Colo. 2007), the trial court "made the factual determination that the air freshener was 'an undefined size' and that there was 'never any testimony as to [its] actual size.'" Unlike that case, we have an extensive record with regard to the dimensions and the length of the chain in the present case, including the object itself as an exhibit.

Massachusetts Appeals Court analyzed a traffic stop conducted pursuant to that state's driver distraction statute, which prohibits "anything [that] may interfere with or impede the proper operation of the vehicle . . . ." Mass. Gen. Laws Ann. c. 90, § 13 (West 2005). The police officer who effectuated the motor vehicle stop in *Brazeau* claimed that he stopped the vehicle in question after observing two or three small items and one prism hanging from the mirror and reflecting light. *Commonwealth* v. *Brazeau*, supra, 66. The court ultimately determined "that a key finding of the [trial] judge was not supported by the evidence and that, without that finding, it cannot be concluded that the investigating officer had reasonable suspicion to stop [the defendant's] vehicle. . . . *There was . . . no evidentiary basis for the judge's finding that the officer stopped the vehicle after seeing a reflection from the prism.* Rather, the evidence adduced at the motion hearing established only that the officer effectuated the stop because he observed one or more small objects hanging from the rearview mirror and, on that basis alone, determined that the operation of the vehicle was or may have been impeded." (Citation omitted; emphasis added.) Id., 65–66. The small size of the objects in question in *Brazeau* contrasts with the ten inch chain with a wooden cross dangling from the rearview mirror in the present case. In addition, the court in *Brazeau* determined that the necessary factual finding, namely, that the officer saw the prism's *reflection*, was unsupported. We, however, have the necessary finding that Mattioli saw the chain hanging from the rearview mirror. Moreover, the Massachusetts statute does not prohibit objects that *distract* a driver, instead prohibiting only one category of objects, namely those that "interfere with or impede" the operation of the vehicle. Mass. Gen. Laws Ann. c. 90, § 13 (West 2005).

The majority concludes that the state presented no testimony that Mattioli considered the chain to present

an obstruction of the defendant's view of the roadway. Essentially, the majority implicitly concludes that the chain was too small to constitute an obstruction. I disagree that the obstruction was small and emphasize that the trial court found credible the fact that the chain hung down more than ten inches from the mirror. By so finding, the majority additionally reads an implied size requirement into our statute. Contrary to the majority, I would not read any additional requirements into § 14-99f (c) for it is the legislature's function, and not that of this court, to decide the provisions of our criminal statutes. As we previously have discussed herein, our legislature intentionally enacted an expansive statute. Our legislature *could* have enacted a statute that prohibited objects that only materially obstruct a driver's view; the legislature, however, did not choose to do so. Under the express terms of § 14-99f (c), even an arguably small object, so long as it obstructed part of the driver's view, could result in a violation of the statute; the size of the obstruction is not defined by the statute. In the present case, as found by the trial court, the ten inch chain plainly was hanging from the rearview mirror, and was therefore in the defendant's sight and constituted an obstruction. More significantly, the object need not obstruct the driver's view as long as it "distract[s] the attention of the operator." General Statutes § 14-99f (c). The majority assumes this outcome to be inequitable and construes the statute to avoid such a result by focusing on the size of the obstruction, despite the lack of any legislative authority to do so.[10] It is our responsibility, however, to interpret criminal statutes as written and to avoid invading the legislative prerogative by reading our own terms into its requirements. See General Statutes § 1-2z; *State* v. *Hanson*, 210 Conn. 519, 529, 556 A.2d 1007 (1989)

---

[10] The issue is not now, nor was it, what constitutes a pretextual stop pursuant to § 14-99f (c). See footnote 1 of the majority opinion.

("Where statutory language is clearly expressed . . . courts must apply the legislative enactment according to the plain terms and cannot read into the terms of a statute something which manifestly is not there in order to reach what the court thinks would be a just result. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." [Citation omitted; internal quotation marks omitted.]).

Because I would reverse the judgment of the Appellate Court concluding that the trial court properly dismissed the charges against the defendant, I respectfully dissent.