HUMPHREYS, J.,
with whom FRANK, PETTY, ALSTON and CHAFIN, JJ., join, dissenting.
The law of search and seizure "with respect to automobiles is intolerably confusing.[22]
Every day, millions are stopped for one of the myriad of regulations governing our use of public streets. As soon as you get into your car, even before you turn the ignition key, you have subjected yourself to intense police scrutiny. So dense is the modern web of motor vehicle regulations that every motorist is likely to get caught in it every time he drives to the grocery store.[23]
This case further exacerbates the intolerable confusion referred to by Justice Powell. “Prior to Terry v. Ohio, [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ] any restraint on the person amounting to a seizure for the purposes of the Fourth Amendment was invalid unless justified by probable cause.” Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (citation omitted). “Terry created a limited exception to this general rule: certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime.” Id. After today and insofar as motor vehicles are concerned, this exception is no longer particularly limited and *310 has now swallowed the general rule. Despite the majority’s assertion to the contrary, I believe that the majority opinion in this case will be read to provide “automatic” reasonable articulable suspicion for any officer to pull a citizen over if he/she observes any object dangling from a rearview mirror. Moreover, henceforth, reasonable suspicion justifying the seizure of citizens will be found even if police officers are mistaken concerning the law as long as their testimony includes magic words such as “I thought ... I believed ... I mistakenly believed ... I suspected ... I mistakenly suspected ...” or as in this case, the officer just doesn’t really know one way or the other. Therefore, I dissent from the analysis and judgment of the majority.
I. Reasonable Suspicion and the Fourth Amendment
Even a cursory review of Terry and the cases which follow it reveal often repeated language requiring specific facts in support of an officer’s suspicion that criminal activity is afoot. “[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity ‘may be afoot,’ even if the officer lacks probable cause.” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). “[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.” Terry, 392 U.S. at 21, 88 S.Ct. at 1880. “A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion.” Sokolow, 490 U.S. at 10, 109 S.Ct. at 1587.
“To establish reasonable suspicion, an officer must be able to articulate more than an unparticularized suspicion or ‘hunch’ that criminal activity is afoot.” Rudolph v. Commonwealth, 277 Va. 209, 210, 722 S.E.2d 527, 528 (2009). “This demand for specificity in the information upon which police action is predicated is the central teaching of [the United States Supreme Court’s] Fourth Amendment jurisprudence.” *311 Terry, 392 U.S. at 21 n. 18, 88 S.Ct. at 1880 n. 18.[24] It is axiomatic that whether or not reasonable suspicion of criminal activity exists must be determined from “the facts available to the officer at the moment of the seizure.” Id. at 21-22, 88 S.Ct. at 1880 (emphasis added). In this case, the facts do not create a reasonable suspicion of any traffic infraction or other violation of the law.[25]
Moreover, the majority overlooks the basic tenet of Terry that the sole constitutionally proper objective of a Terry stop is to confirm or dispel suspicion of criminal activity. Jurisprudence from various federal circuits supports this proposition. See e.g., United States v. Branch, 537 F.3d 328, 336 (4th Cir.2008) (“If a police officer wants to detain a driver beyond the scope of a routine traffic stop ... he must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place.” (citation omitted));[26] *312 Croom v. Balkwill, 645 F.3d 1240, 1251 n. 15 (11th Cir.2011) (“[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop”); United States v. Andres, 703 F.3d 828 (5th Cir.2013) (holding that a traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges).
I dissent from the analysis and judgment of the majority and would reverse the trial court and remand this case for two reasons. First, Officer Richards’s failure to investigate the existence of the alleged “criminal activity” is fatal to any justification of Mason’s seizure under Terry and its progeny. Second, the testimony of Officer Richards articulated absolutely no facts from which reasonable suspicion of criminal activity can be inferred, and the parking pass, in its capacity as an exhibit, does nothing to overcome that failure.
Officer Richards made no effort whatsoever to investigate the “criminal activity” he asserted to be the basis for the stop. Instead, Officer Richards testified that the only reason he stopped the vehicle was because he observed “a dangling object.”[27] Yet, Officer Richards testified that, after stopping the vehicle, he never sat in the driver’s seat or otherwise made any attempt to determine if a driver could see the roadway through the windshield given the “dangling object’s” size and location behind the rearview mirror. At no point was Officer Richards able to articulate any facts that, even when coupled *313 with an examination of the pass itself and other evidence in the record, would lead to any objective belief that the “dangling object” was suspended “in such a manner as to obstruct the driver’s clear view of the highway” as prohibited by Code § 46.2-1054.[28]
Despite the deficiencies in Officer Richards’s testimony, the majority asserts that his testimony supplied evidence of “criminal activity” when, after being handed the parking pass as an exhibit in the trial, he noted in response to the prosecutor’s abstract question that because of its opaque nature, the 3" x 5" parking pass “could [obstruct a driver’s view].”[29] Alternatively, the majority reasons that the parking pass itself supplies the missing articulated evidence of “criminal activity” despite factual findings by the trial court to the contrary. These conclusions are inapposite to Terry and its progeny.
As to the former position advanced by the majority, the record is clear that neither Officer Richards’s answer to the prosecutor’s abstract question, nor the context supplied by the question itself established any facts or reasonable inferences that the parking pass and its placement in the vehicle blocked any view of the highway. If either the answer or the context of the question had done so, the record then would at least have provided the missing evidence of criminality that the majority creates out of whole cloth. In this case, Officer Richards articulated only facts that supported entirely lawful conduct and failed to provide any reason to suspect that criminal activity was occurring or about to occur. Insofar as evidence of “criminal activity” provided by the parking pass *314 itself is concerned, I believe that the unequivocal and reiterated factual findings by the trial court which consistently and repeatedly stated that the parking pass, as placed in the vehicle, would not obstruct the driver’s view of the highway renders this portion of the majority’s analysis untenable.
The majority insists that the trial court’s statement, “because there is an object dangling ... [the officer] is entitled constitutionally to investigate further” was the actual factual finding by the trial court rather than simply its legal conclusion. In my view, the context of the trial court’s words could hardly be clearer that this statement was actually an erroneous legal holding based upon the Commonwealth’s equally erroneous argument that the mere fact that any object was suspended from the rearview mirror, was per se sufficient reasonable suspicion of criminal activity to justify the seizure of the vehicle and its occupants.
The majority generally dismisses all of the trial court’s statements regarding the parking pass as “the judge’s off-the-cuff remarks from the bench.” However, immediately following Officer Richards’s testimony, and in response to the prosecutor’s argument that reasonable suspicion exists to stop the car because there is an object hanging from the mirror that “does obstruct and you can’t see through it,” the trial court responded,
I will say this to you Ms. Pleas [prosecutor], I think you can hang this [parking pass] on any car in America, and it won’t obstruct the view at all. It hangs up on the rearview mirror, which is up here. That doesn’t obstruct your view. You don’t even see the highway up there. The highway is out here. It doesn’t obstruct your view at all. But that’s not even the question. Now — but that’s not even the question — the question in the case is whether there is reasonable suspicion that the object could obstruct the view. Because it doesn’t — I’m trying whether the officer could believe it. And I think it’s not an obvious answer to that.
J.A. at 34-35. Contrary to the assertion of the majority, the trial court’s subsequent erroneous legal holding does not *315 nullify or “supersede” its factual findings that the parking pass would not obstruct the view of the driver “on any car in America.” Such a conclusion would fly in the face of well-settled law in Virginia that mandates this Court evaluate a trial court’s fact-finding through a wholly distinct lens than a trial court’s conclusions of law. Indeed, in a Fourth Amendment case, this Court must evaluate both the factual findings and conclusions of law of the trial court. In such a scenario, this Court gives “deference to the factual findings of the trial court” and “independently determined” whether those findings satisfy the requirements of the Fourth Amendment. Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003). “There is good reason for the rule that appellate courts must defer to the factual findings of the trial judge in Fourth Amendment cases. The fact patterns in such cases arrive in infinite variety, seldom or never exactly duplicated.” Malbrough v. Commonwealth, 275 Va. 163, 171, 655 S.E.2d 1, 5 (2008).
The factual statements of the trial court regarding the parking pass support only the legal position advanced by the Commonwealth and ultimately adopted by the trial court, that all objects suspended from a rearview mirror per se provide reasonable suspicion to detain a vehicle’s occupants. The majority overcomes this logical deficiency by recasting the trial court’s legal conclusion that “an object dangling ... [entitles the officer] constitutionally to investigate further” as a factual finding that the pass obstructs a driver’s view of the highway. However, such recasting is outside the proper role of an appellate court. See Thomas v. Commonwealth, 48 Va.App. 605, 608, 633 S.E.2d 229, 231 (2006) (“We review the factfinding of a lower court ‘with the highest degree of appellate deference.’ ”); see also Commonwealth v. Hilliard, 270 Va. 42, 49-50, 613 S.E.2d 579, 584 (2005) (An appellate court reviews the trial court’s “findings of historical fact only for clear error and must give deference to the inferences that may be drawn from those factual findings.”). As such, this Court is bound by the repeated factual findings of the trial court that *316 the parking pass did not, and would not obstruct the view on “any car in America.”
II. The Officer’s Mistake of Law
Officer Richards’s failure to investigate the criminal activity suspected here is also fatal to a Fourth Amendment analysis.[30] Investigation of the suspected criminal activity is the only rationale for a detention under Terry. It is axiomatic that if an officer takes no action to confirm or dispel the suspicion of criminal activity, the detention is unwarranted. Moreover, while pretextual stops are permissible under the Supreme Court’s holding in Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), that is only so if probable cause exists that an offense has been committed. Thus, even though the offense for which probable cause exists is a pretext for the real reason for the detention, the existence of probable cause for any offense, satisfies the Fourth Amendment. Here, there is no suggestion of probable cause for any offense whatsoever and therefore any detention that does not serve the limited purpose of a Terry stop, is necessarily unconstitutional.[31]
It is also obvious to me, as it was to the trial court, that Officer Richards never investigated the “criminal activity” he *317 asserted was afoot because he mistakenly believed that any object suspended from the interior of a vehicle violated the law. The trial court asked counsel “Is it of any probative value that the officer never inquired as to whether — never even looked to see whether the object, in fact obstructed the highway?” J.A. at 47. The trial court then noted, “Listening to [Officer Richards] answering the questions, this was a stop because of the existence of a dangling object. That’s what the officer did. And he — and I’m not claiming bad faith. It may be a misapprehension of the law.” J.A. at 51. “[Officer Richards] didn’t have any idea that this [object] needed to be an obstruction.” J.A. at 52.
Significantly, the trial court then asked the prosecutor, “Is it the Commonwealth’s position that any object that dangles gives rise to the stop of the vehicle?” The prosecutor responded in the affirmative, and the trial court noted “I think you’ve got to get there. I think that’s what you’ve got to argue.” “[S]o the issue becomes, and where the Court has put its focus, is whether or not essentially the mere fact of a dangling object gives the officer reasonable suspicion to stop to determine whether or not the object, and I quote the statute ‘obstructs the driver’s clear view of the highway.’ ” J.A. at 102 (emphasis added). The trial court ultimately and, in my view, erroneously, adopted the Commonwealth’s argument as its holding, relying upon two circuit court opinions and an unpublished opinion of this Court and never considered the officer’s failure to actually investigate the statutory violation as a factor in its analysis.
The Commonwealth previously maintained on brief and at oral argument before the panel, the position it took at trial and that the trial court adopted, that “dangling objects” per se “provide reasonable suspicion to stop any vehicle.” The Commonwealth retreated from this position to the “know it when you see it” reasonable suspicion standard for the first time in oral argument before this Court sitting en banc, implying without overtly arguing that the trial court now was right but for the wrong reason. The majority now adopts this standard. In my view, the Commonwealth is incorrect in both its original *318 and revisionist positions on the application of the law. Moreover, without any guidance or any limitations to lower courts or police officers, the majority’s analysis amounts to choosing the latter option of overreaching hindsight in the Hobson’s Choice of either agreeing with the trial court and the Commonwealth’s original position that it is objectively reasonable to stop all motor vehicles with any object hanging from the mirror regardless of any possible obstruction of the view of the highway, and the alternative “we will know it when we see it” standard advanced today pursuant to de novo fact-finding by this Court regarding the object in question.
To be clear, a traffic stop will be deemed a reasonable “seizure” when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop. An officer need not be factually accurate in his belief that a violation has occurred, but, instead, need only produce facts establishing that he reasonably believed a violation had taken place. Illinois v. Rodriguez, 497 U.S. 177, 185-86, 110 S.Ct. 2793, 2799-800, 111 L.Ed.2d 148 (1990) (emphasis added). In order to satisfy the reasonableness requirement of the Fourth Amendment, what is necessary of “the police officer conducting a search or seizure under one of the exceptions to the warrant requirement ... is not that they always be correct, but that they always be reasonable.” Id. at 185, 110 S.Ct. at 2800. However, reasonableness will not normally be found in mistakes of law by a police officer.
The United States Supreme Court recently held that only objectively reasonable mistakes of law are acceptable excuses from strict compliance with the Fourth Amendment. Significantly, for the purposes of the analysis here, the Supreme Court rejected the proposition that a good faith mistake of law was per se unreasonable under the Fourth Amendment, but Chief Justice Roberts clarified that “[t]he limit is that the mistakes must be those of reasonable men.” Heien v. North Carolina, — U.S.-,-, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014). “An officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound *319 to enforce.” Id. at-, 135 S.Ct. at 539-40. The statute in question in Heien contained confusing language, making it unclear whether only one working “stop lamp” (brake light) was required by law, especially considering another statute seemed to suggest that vehicles must have “all originally equipped rear lamps or the equivalent in good working order.” Id. at-, 135 S.Ct. at 540.
Unlike the statute in Heien that involved a difficult issue of statutory interpretation well outside the ken of non-lawyer police officers, the statute at issue in this case suffers from no such infirmity. No objectively reasonable officer could sensibly conclude from a reading of Code § 46.2-1054 that an object simply hanging from the rearview mirror is unlawful, unless it also obstructs the driver’s clear view of the highway. Indeed, it is evident from the totality of Officer Richards’s testimony that the trial court was correct in observing that Officer Richards mistakenly believed that any object suspended from the interior of a vehicle constituted a Class 4 misdemeanor pursuant to Code § 46.2-1054, as opposed to only those objects which are suspended “in such a manner as to obstruct the driver’s clear view of the highway.”
The alleged traffic infraction (merely having a parking pass suspended from the rearview mirror) that formed the basis of the stop, was at best the sort of “sloppy study” of Code § 46.2-1054 referred to by Chief Justice Roberts in Heien. To hold otherwise ignores the observation by both the majority and dissent in Heien that it would be a rare situation where the law is so confusing that it would be reasonable for a police officer to be unaware of it. Further, such a holding would also mean that ignorance of the plain language used in the law, as opposed to any nuanced interpretation of it, is an automatic excuse for police officers, although certainly not for those they arrest. Since Officer Richards was unable to testify to any facts, objectively viewed, that would support reasonable suspicion that the parking pass violated Virginia law, application of the Supreme Court’s holding in Heien compels a conclusion that Officer Richards’s objectively unreasonable mistake of law was insufficient to justify a stop under the Fourth Amendment.
*320 Moreover, several other states with similar statutes to Code § 46.2-1054 have also held that the mere presence of dangling objects from the rearview mirror, without facts supporting an objective officer’s reasonable suspicion that the object was obstructing the driver’s view of the highway, violates the Fourth Amendment. See e.g. People v. Arias, 159 P.3d 134, 138-39 (Colo.2007) (holding that a motor vehicle stop was unjustified because the officer who erroneously thought that an air freshener hanging from a rearview mirror, regardless of whether it “obstructed” the “driver’s vision through any required glass equipment,” was a violation of Colorado law had not testified to any facts to support an objective finding that the air freshener obstructed driver’s view); People v. Cole, 369 Ill.App.3d 960, 314 Ill.Dec. 171, 874 N.E.2d 81, 87-88 (finding that a motor vehicle stop was unjustified because the officer did not realize the statute required the suspended object to “materially obstruct” the driver’s view and that despite the officer’s mistaken interpretation of the law, was unable to articulate facts that a reasonable officer would have found to support reasonable suspicion that the defendant, who had beads hanging from his rearview mirror, was violating the law as written), cert. denied, 223 Ill.2d 644, 310 Ill.Dec. 251, 865 N.E.2d 971 (2007); and State v. Cyrus, 297 Conn. 829, 1 A.3d 59, 68 (2010) (holding that an officer’s mistaken belief that any object hanging from the rearview mirror violated Connecticut law could not support a finding of reasonable suspicion because the officer’s testimony offered no facts or any objective basis to conclude he suspected that the chain and cross hanging from the defendant’s rearview mirror obstructed the driver’s view or that such a belief would have been objectively reasonable).
The majority asserts that “our holding does not endorse any per se rule authorizing traffic stops whenever an object of any kind is observed dangling from a vehicle’s rearview mirror.” Yet, its analysis, failing as it does to provide any substantive guidance to police and trial courts, has the consequence of implying just the opposite — that it is nevertheless reasonable to stop any vehicle, any time, if it has any object suspended *321 from the mirror or windshield. It does not matter that the object may be a parking pass, graduation tassel, GPS receiver, government issued toll transponder, or any other object no matter the size. All such vehicles may now be stopped and the occupants detained in the sure and certain knowledge that today’s precedent will justify their stop despite any testimonial deficiency in the articulation of facts establishing reasonable suspicion of criminal activity, any failure to conduct an investigation into the suspected criminal activity, and even ignorance of the plain language of the statute in question by those supposed to enforce it.
III. The Exclusionary Rule
Although, for the reasons stated, I would hold that Mason’s Fourth Amendment rights were violated when the vehicle in which he was a passenger was stopped, I cannot say based upon the record before us that the exclusionary rule requires the suppression of the evidence in this case. See Hudson v. Michigan, 547 U.S. 586, 592, 126 S.Ct. 2159, 2164, 165 L.Ed.2d 56 (2006) (noting that the exclusionary rule does not apply to “ ‘every item of evidence that has a causal connection with police misconduct’ ” (quoting Segura v. United States, 468 U.S. 796, 829, 104 S.Ct. 3380, 3398, 82 L.Ed.2d 599 (1984) (Stevens, J., dissenting))). Mason had no apparent standing to object to the seizure or search of the driver, and the trial court, having denied the motion to suppress, made no determination as to whether the driver’s consent to search his person, which led to the search of the car and the discovery of evidence against Mason, attenuated any illegality of the stop as it pertained to and affected Mason. See Schneckloth v. Bustamonte, 412 U.S. 218, 248-49, 93 S.Ct. 2041, 2058-59, 36 L.Ed.2d 854 (1973) (holding that whether an individual’s consent to a search was voluntary is a factual question); United States v. Seidman, 156 F.3d 542, 548 (4th Cir.1998) (concluding that after the trial court determined that the officer entered Seidman’s residence in violation of the Fourth Amendment and that Seidman voluntarily consented to the conversation with the officer, the trial court should have gone further and determined “whether *322 the taint arising from the unlawful entry was sufficiently attenuated by the consent”).
IV. Conclusion
Concluding as I do that the trial court erred in its holding that reasonable suspicion existed to justify the seizure of the vehicle and its occupants under the Fourth Amendment, I would reverse and remand for a new trial including a determination by the trial court regarding the applicability of the exclusionary rule if the Commonwealth is so advised.

. Robbins v. California, 453 U.S. 420, 430, 101 S.Ct. 2841, 2847-48, 69 L.Ed.2d 744 (1981) (Powell, J., concurring).

. Markus Dirk Dubber, Policing Possession: The War on Crime and the End of Criminal Law, 91 J.Crim. L. & Criminology 829, 874 (2001). The "War on Crime,” "War on Drugs,” and "War on Terror” have all been used to justify limits to basic Fourth Amendment protections. I would not add a "War on Dangling Objects” to that list.

. "The Fourth Amendment applies to seizures of the person, including brief investigatory stops such as the stop of the vehicle.... An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.” United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (citations omitted); see also Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979) (stopping an automobile and detaining the driver is unreasonable under the Fourth Amendment unless there is at least articulable and reasonable suspicion that the vehicle or an occupant is subject to seizure for violation of the law). When a police officer makes a traffic stop, the passenger is seized within the meaning of the Fourth Amendment and may challenge the constitutionality of the stop. Brendlin v. California, 551 U.S. 249, 251, 127 S.Ct. 2400, 2403, 168 L.Ed.2d 132 (2007).

. "We must not allow our zeal for effective law enforcement to blind us to the peril to our free society that lies in this Court's disregard of the protections afforded by the Fourth Amendment.” Royer, 460 U.S. at 513, 103 S.Ct. at 1332 (Powell, J., concurring).

. Another case from the same circuit, United. States v. Johnson, 734 F.3d 270, 275 (4th Cir.2013), stands for the proposition that "it is not relevant whether the officers proceed to take further action on the predicate traffic violation” once a vehicle is detained. However, this case is inapplicable to the one before us because in Johnson the police officer actually observed and testified to unlawful conduct amounting to probable cause (driving with an illegible license plate in violation of Maryland law) prior to the stop. Conversely, in this case, Officer *312 Richards only observed wholly lawful conduct and surrounding circumstances that fall far short of suggesting that any criminal activity was afoot prior to initiating the stop.

. The majority contends that Officer Richards intended to "issue the driver a summons for driving without a seatbelt and for violating Code § 46.2-1054." However, Officer Richards testified that at the time of the stop, which is the point in time when the existence of reasonable suspicion is determined, the only thing he observed was the dangling object. J.A. at 28-29. Indeed, the record reflects that there was a stipulation by the parties that the dangling object was the only basis for the stop. Id.

. Although appellant raises no issue regarding the vagueness of the statute and thus I do not consider the applicability of our Supreme Court’s decision in Tanner v. City of Virginia Beach, 277 Va. 432, 438, 674 S.E.2d 848, 852 (2009), it nevertheless seems to me that the fact that the statute suggests a subjective standard of enforcement for police officers, contributes to the majority's flawed analysis.

. On redirect, the attorney for the Commonwealth handed the parking pass to Richards and asked, "So it’s not clear that you can’t — you can’t see through it, so it could obstruct a driver's view?” Officer Richards replied, "It could, yes, ma’am.”

. The majority asserts that appellant never raised this issue on appeal. However, appellant clearly challenges the stop of the vehicle, arguing that reasonable suspicion did not exist to justify the Terry stop under the Fourth Amendment. The law is abundantly clear that "reasonable suspicion” must be related to whether criminal activity is afoot. As such, it is proper and necessary for this Court’s analysis to determine if the seizure was conducted in a manner to confirm or dispel suspicion of a violation of Code § 46.2-1054, which should have been the ultimate objective of a Terry stop. Therefore, the assignment of error on appeal fairly encompasses the basis for the stop, the failure to effectuate the purpose of the stop and any mistake of law upon which "reasonable suspicion” was supposedly based.

. I am not suggesting, however, that a valid Terry stop does not prevent a law enforcement officer from generally investigating any and all possible criminal activity that a reasonable officer would suspect given the circumstances, including requesting consent to conduct a search.